UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION AT CLEVELAND

| | |
|---|---|
| **LINDA L. GASPER,** individually and on behalf of all others similarly situated, | Case No. |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR DAMAGES** |
| v. | |
| **GREGORY FUNDING, LLC**, | **DEMAND FOR JURY TRIAL** |
| Defendant. | |

Plaintiff Linda L. Gasper ("Plaintiff"), individually and on behalf of all others similarly situated, by and through counsel, brings this action against Defendant Gregory Funding, LLC ("Defendant" or "Gregory"), and for her Class Action Complaint, states as follows:

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff is a natural person residing in Cuyahoga County, Ohio.

2. Gregory is an incorporated business under the laws of the State of Oregon which does business in Ohio as a licensed foreign corporation. Gregory's registered agent in Ohio is CT Corporation System, 4400 Easton Commons Way, Suite 125, Columbus, Ohio 43219.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as one of Plaintiff's claims arises under federal law, specifically the Fair Debt Collection Practices Act ("FDCPA")—codified at 15 U.S.C. §§ 1692, *et seq*.

4. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 to hear the state law claims brought under the Ohio Residential Mortgage Licensing Act ("RMLA")—codified at R.C. 1322.01, *et seq.*—and under common law for breach of contract.

5. Venue lies in this District pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the claims asserted herein occurred within this District.

**STATEMENT OF FACTS**

*Plaintiff's and Class Members' Loans*

6. Gregory is the servicer of Plaintiff's and Class (defined *infra*) members' notes, and mortgages on real property that secure those notes (collectively, the "loans").

7. As a mortgage loan servicer, Gregory—on behalf of the assignees, investors, and/or owners to whom payments towards the loans are ultimately due—regularly attempts to secure payments on customers' mortgage loans, including Plaintiff's and Class members' loans.

8. On information and belief, Plaintiff's and Class members' loans contain substantially similar language, as they were drafted using standardized templates, specifically, the "Uniform Instruments" required by the Federal National Mortgage Association (Fannie Mae) and the Federal Home Loan Mortgage Corporation (Freddie Mac) and otherwise commonly used by lenders in the origination of mortgages.

9. When Gregory acquired the servicing rights to Plaintiff's loan and FDCPA Subclass (defined *infra*) members' loans, Plaintiff and FDCPA Subclass members were in default of their obligations thereunder.

10. Gregory is a "debt collector" as defined by 15 U.S.C. § 1692a(6), as it regularly engages, or attempts to engage, in the collection of "debts", and it regularly collects debts owed or due, or asserted to be owed or due, to another for which the primary purpose is for personal, family, or household use, including Plaintiff's and Class members' loans.

11. Gregory, is a mortgage servicer, as defined by R.C.1322.01(AA), as it is an entity that "for itself or on behalf of the holder of a mortgage loan, holds the servicing rights, records mortgage payments on its books, or performs other functions to carry out the mortgage holder's obligations or rights under the mortgage agreement including, when applicable, the receipt of funds

from the mortgagor to be held in escrow for payment of real estate taxes and insurance premiums and the distribution of such funds to the taxing authority and insurance company."

12. Gregory, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

13. Plaintiff and each member of the Ohio Subclass, defined *infra*, is a "buyer" as defined by R.C.1322.01(H), as each is an individual whose loan is serviced by a mortgage servicer, Gregory.

14. Pursuant to the terms of Plaintiff's and Class members' loans, Plaintiff and Class members are (or were) required to make periodic, monthly installment payments on their loans until the entire balance is paid in full. *See*, note for Plaintiff's loan ("Plaintiff's Note"), ¶ 3, attached hereto as **Exhibit 1**; *see also*, a copy of Plaintiff's mortgage ("Plaintiff's Mortgage"), attached as **Exhibit 2**, ¶ N. Plaintiff's and Class members' loans specifically refer to these periodic installment payments as "monthly payments." *See, e.g.*, Plaintiff's Note, ¶¶ 3, 6.

15. Plaintiff's and Class members' loans further provide that if any "monthly payment" is not paid within a certain number of days after it is due, Plaintiff and Class members will be required to pay a "late charge." *See*, Plaintiff's Note, ¶ 6(A); *see also*, Plaintiff's Mortgage, ¶ 1.

16. Pursuant to the terms of Plaintiff's and Class members' loans, if Plaintiff and Class members fail to timely make each required "monthly payment," they will be in default on their loans. *See*, Plaintiff's Note, ¶ 6(B). Plaintiff's and Class members' loans further provide that if they are in default, the "Note Holder"—*e.g.*, the current owner of the loan, or the servicer of the loan (on behalf of the current owner of the loan)—may send them written notice that if they do not pay the delinquent balance of their respective loans by a certain date, the Note Holder may require them to immediately pay the full balance of their respective loans—*i.e.*, Plaintiff's and Class

members' loans would be "accelerated." *See*, Plaintiff's Note, ¶ 6(C); *see also*, Plaintiff's Mortgage, ¶ 22.

17. Based on the plain terms of Plaintiff's and Class members' loans, Plaintiff and Class members are (or were) no longer required to make "monthly payments" on their loans after acceleration. Indeed, acceleration, by definition, requires a borrower to pay the *entire balance* of a loan *immediately*, instead of in preset installment amounts made at regularly scheduled and predetermined intervals. *Compare*, Plaintiff's Note, ¶ 6(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations).

18. As noted above, the terms of Plaintiff's and Class members' loans establish that the condition precedent to the imposition of "late charges" is the failure to comply with their "monthly payment" obligations. *See*, Plaintiff's Note, ¶ 6(A). However, after acceleration, that condition precedent can no longer occur because Plaintiff's and Class members' obligation to make "monthly payments" ceases. Therefore, Plaintiff's and Class members' loans *do not* authorize the imposition of "late charges" after acceleration.

### Gregory's Improper Imposition of Late Charges

19. At some point during the time relevant to this action, Plaintiff's and Class members' loans were each in default due to their failure to timely remit periodic "monthly payments" on their loans. *See*, Plaintiff's Note, ¶ 6(B).

20. In compliance with the terms of Plaintiff's and Class members' loans, the assignees, investors, owners and/or servicers of the loans, sent notices of default to Plaintiff and Class members stating that if Plaintiff and Class members did not pay all overdue amounts, they would require Plaintiff and Class members to immediately pay the full amount of unpaid principal and

all the interest owed on such amount—*i.e.*, Plaintiff's and Class members' loans would be "accelerated." *See*, Plaintiff's Note, ¶ 6(C).

21. After receiving the notices of default, Plaintiff and Class members did not remit further payments on their loans. As a result, the assignees, investors, owners and/or servicers of the loans, accelerated Plaintiff's and Class members' loans. *See*, Plaintiff's Note, ¶ 6(C).

22. For the reasons set forth *supra*, at the time Plaintiff's and Class members' loans were accelerated, their obligation to remit timely periodic "monthly payments" on their loans ceased, as they were instead required to *immediately* pay the *entire balance* of their loans. *See*, Plaintiff's Note, ¶ 6(C).

23. Since Plaintiff and Class members no longer had the obligation to remit timely periodic "monthly payments" on their loans, the condition precedent relative to the imposition of "late charges"—*i.e.*, the failure to timely remit "monthly payments"—did not, and could not, exist.

24. Nevertheless, Gregory—acting on its own behalf, and on behalf of the assignees, investors, and/or owners of such loans—continued to impose "late charges" against Plaintiff and Class members (the "Improper Late Fees"). For the reasons stated above, these Improper Late Fees were not authorized by the terms of the loans or otherwise by law.

25. Gregory's imposition of Improper Late Fees is part of a pattern and practice of behavior.

### The Harm to Plaintiff and Class Members

26. Gregory's actions described hereon harmed Plaintiff and Class members in several ways, as specified *infra*.

27. Gregory, acting on its own behalf or on behalf of the assignees, investors, and/or owners of Plaintiff's and Class members' loans, breached the terms of the loans by imposing Improper Late Fees. Gregory, acting on its own behalf or on behalf of the assignees, investors, and/or owners of such loans, has asserted, and will continue to assert, that these Improper Late Fees are amounts due and owing pursuant to the terms of Plaintiff's and Class members' loans, and that these debts are valid. As such, Gregory has collected, and will continue to collect (or attempt to collect) these Improper Late Fees through mortgage servicing, debt collection activities, foreclosures (and deficiency judgments), claims in bankruptcy proceedings, etc.

28. In fact, because of the claims for Improper Late Fees, some Class members reasonably believed that they were required to pay the Improper Late Fees, and, as a result, paid those Improper Late Fees (either directly or indirectly) as part of reinstatement, payoff refinancing their loans, by accepting a loan modification, in foreclosure, or in bankruptcy proceedings. These payments were made under the mistaken belief that the Improper Late Fees were, in fact, proper. These payments were also paid under duress. Indeed, any reasonable borrower would feel compelled to pay the Improper Late Fees when faced with a choice between (1) paying the Improper Late Fees—a relatively small amount of money in comparison to the outstanding balance of his/her loan—in order to reinstate his/her loan, or (2) permanently losing his/her home through foreclosure.

**FACTS RELEVANT TO PLAINTIFF**

29. On March 12, 2010, Plaintiff entered a mortgage loan with non-Party Bank of America N.A., which was secured by a mortgage on Plaintiff's principal place of residence. *See*, Plaintiff's Note, ¶ 1; *see generally*, Plaintiff's Mortgage.

30. Gregory currently services Plaintiff's loan on behalf of the assignee of Plaintiff's loan, non-party Ajax Mortgage Loan Trust 2019-E, Mortgage-Backed Securities, Series 2019-E, U.S. Bank National Association, as Indenture Trustee ("Ajax"), pursuant to a contractual agreement between Gregory and Ajax.

31. Pursuant to the terms of Plaintiff's loan, Plaintiff was required to make periodic, "monthly payments" of principal and interest in the amount of $874.69 until the entire balance was paid in full. *See*, Plaintiff's Note, ¶ 3. Each of Plaintiff's "monthly payments" was due on the first day of each month beginning on April 1, 2010. *See*, Plaintiff's Note, ¶ 3(B).

32. Plaintiff's loan further provided that if any "monthly payment" was not paid within 15 days after it is due, Plaintiff would be required to pay a "late charge" in the amount of 5.000% of the overdue "monthly payment" amount—that is, $43.73. *See*, Plaintiff's Note, ¶ 6(A).

33. Pursuant to the terms of Plaintiff's loan, if Plaintiff failed to timely make each required "monthly payment," she would be in default on her loan. *See*, Plaintiff's Note, ¶ 6(B). Plaintiff's loan further provided that if she were in default, the Note Holder may send her written notice that if she did not pay the delinquent balance by a certain date, her loan would be accelerated. *See*, Plaintiff's Note, ¶ 6(C); Plaintiff's Mortgage, ¶ 22.

34. Plaintiff failed to make her "monthly payments" on her loan in June 2015 and thereafter. As such, Plaintiff was in default on her loan beginning on June 1, 2015. *See*, Plaintiff's Note, ¶ 6(B) (stating that if Plaintiff "do[es] not pay the full amount of each monthly payment on the date it is due, [Plaintiff] will be in default").

35. The assignee, investor, owner and/or servicer of Plaintiff's loan subsequently sent Plaintiff a letter stating that Plaintiff was in default on her loan, and that she was required to pay the delinquent balance, plus "late charges," by a specified "Cure Date" (the "Default Letter").

36. The Default Letter also stated that Plaintiff's failure to pay the delinquent balance, plus "late charges," by the Cure Date may result in acceleration of Plaintiff's loan and the commencement of foreclosure proceedings.

37. Plaintiff did not make any further payments on her loan after receiving the Default Letter, and the assignee, investor, owner and/or servicer of accelerated Plaintiff's loan.

38. On or about March 14, 2018, the previous assignee and/or servicer of Plaintiff's loan, non-party Bank of America, N.A., filed a foreclosure action against Plaintiff in the Medina Court of Common Pleas captioned *Bank of America, N.A. v. Linda L. Gasper,* et al., Case No. CV-19-913410 (the "Foreclosure Action").

39. Based on the plain terms of Plaintiff's loan, Plaintiff was no longer required to make "monthly payments" on her loan after it was accelerated. *Compare Plaintiff's* Note, ¶ 6(C) (describing Plaintiff's payment obligations after acceleration) *with* Plaintiff's Note, ¶ 3 (describing Plaintiff's "monthly payment" obligations).

40. Gregory obtained servicing rights to Plaintiff's loan when Plaintiff was still in default and the Foreclosure Action remained pending. Because Plaintiff was still in default at that time, Plaintiff had no obligation to make "monthly payments" under the terms of her loan. Therefore, Gregory—acting on behalf of Ajax—had no obligation or right to collect "monthly payments" from Plaintiff relative to her loan upon obtaining servicing rights to her loan.

41. As noted above, Plaintiff's loan only authorized the imposition of "late charges" in the event that Plaintiff failed to make a required "monthly payment." *See*, Plaintiff's Note, ¶ 6(A). Because Plaintiff's obligation to make "monthly payments" on her loan ceased after it was accelerated, Gregory—acting on behalf of Ajax—had no authority to impose "late charges" against Plaintiff.

42. On May 20, 2020, Gregory—acting on behalf of Ajax—sent Plaintiff a "Loan Payoff Statement" which contained a payoff amount for Plaintiff's loan good through June 19, 2020 in the amount of $186,192.85. *See*, Plaintiff's Payoff Statement, attached as **Exhibit 3**.

43. As part of the total amount due set forth in Plaintiff's Payoff Statement, Gregory—acting on behalf of Ajax—demanded $349.83 in late charges, specifically:

   a. "Unpaid Late Charges" in the amount of $306.11—that is, on information and belief, seven (7) late charges each in the amount of $43.73 that Gregory imposed against the loan for the months of October 2019 through April 2020; and,

   b. "Accrued Late Charges" in the amount of $43.73—that is, on information and belief, a late charge of $43.73 imposed for Plaintiff's failure to remit a "monthly payment" for May 2020.

*See*, Exhibit 3.

44. However, based on the plain terms of Plaintiff's loan, since Gregory obtained servicing rights to Plaintiff's loan when it was in default and it had remained in default as of Gregory's sending of Plaintiff's Payoff Statement, Gregory had no authority to impose any of these late fees.

45. Not only did Gregory impose eight (8) Improper Late Fees through May 2020, but Gregory also continued to impose further Improper Late Fees thereafter.

46. In total, Gregory imposed fourteen (14) Improper Late Fees against Plaintiff's loan.

47. On or about November 9, 2020, Gregory sent correspondence to Plaintiff with a "LOAN MODIFICATION AGREEMENT" enclosed therewith (the "Modification"). *See*, a copy of the executed Modification, attached as **Exhibit 4**.

48. Per the terms of the Modification, a "Net Arrearage" of $32,115.46 along with escrow advances totaling $9,100.08 were capitalized onto the unpaid principal balance of Plaintiff's loan with the modified principal balance of the loan totaling $181,923.76 as of the effective date of the Modification. *See*, Exhibit 4.

49. Gregory did not provide any explanation as to the amounts comprising the "Net Arrearage." *See*, Exhibit 4. However, as explained below, and on information and belief, this "Net Arrearage" consisted, in part, of Improper Late Fees.

50. Gregory sent Plaintiff a periodic billing statement for the Loan for the payment due February 1, 2021 (the "Mortgage Statement"). *See*, a copy of the Mortgage Statement, attached as **Exhibit 5**.

51. The Mortgage Statement identified the transactions posted to Plaintiff's loan from December 18, 2020 through January 20, 2020, which included the transactions for the onboarding of the Modification. *See*, Exhibit 5.

52. As reflected on the Mortgage Statement (Exhibit 5), on January 11, 2021, three (3) transactions were posted to Plaintiff's loan—described as "Loan Modification"—reflecting the amounts capitalized onto the unpaid principal balance of the loan through the Modification, specifically:

    a. $9,100.08 for the escrow advances referenced in the Modification;

    b. Two (2) transactions totaling the "Net Arrearage" amount of $32,115.46;

        i. $31,590.70 in interest; and,

        ii. $524.76 in "Fees & Charges" which totals the amount due and owing for twelve (12) of the Improper Late Fees.

53. Another transaction posted to the loan on January 11, 2021 consists of a "Late Fee Adjustment" crediting $87.46 to the loan constituting a waiver of the remaining two (2) Improper Late Fees that Gregory imposed against the loan.

54. In total, Gregory imposed at least fourteen (14) Improper Late Fees to Plaintiff's loan and capitalized twelve (12) of these Improper Late Fees onto the modified principal balance of her loan upon which she will incur and need to pay interest at a rate of 5.250%.

55. That is, not only has Gregory effectively charged Plaintiff for $524.76 in Improper Late Fees, but Gregory has done so in such a manner to force Plaintiff to pay interest on the Improper Late Fees.

56. Upon Gregory's boarding of the Loan Modification on or about January 11, 2021, the default on Plaintiff's loan was cured and the Foreclosure Action was dismissed on or about January 28, 2021.

## CLASS ACTION ALLEGATIONS

57. **Class Definition**: Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Class"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4) whose mortgage loans were serviced by Gregory at any point after their mortgage loans were accelerated.

> Excluded from the Class are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Class; (4) any persons who have had

their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

58. **FDCPA Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "FDCPA Subclass"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property to which Gregory acquired servicing rights after the loans were in default, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4) whose mortgage loans were serviced by Gregory at any point after their mortgage loans were accelerated.
>
> Excluded from the FDCPA Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the FDCPA Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

59. **Ohio Subclass Definition**: Plaintiff also brings this action pursuant to Fed. R. Civ. P. 23 on behalf of a class of similarly situated individuals and entities (the "Ohio Subclass"), defined as follows:

> All loan borrowers in United States, during the applicable statute of limitations period, (1) who have mortgage loans secured by residential real property located in the State of Ohio, (2) whose mortgage loans did not provide for the imposition of late fees or charges after acceleration of their mortgage loans, (3) against whom late fees or charges were imposed or demanded after acceleration of their mortgage loans, and (4) whose mortgage loans were serviced by Gregory at any point after their mortgage loans were accelerated.

>Excluded from the Ohio Subclass are: (1) Defendant, Defendant's agents, subsidiaries, parents, successors, predecessors, and any entity in which Defendant or their parents have a controlling interest, and those entities' current and former employees, officers, and directors; (2) the Judge to whom this case is assigned and the Judge's immediate family; (3) any person who executes and files a timely request for exclusion from the Ohio Subclass; (4) any persons who have had their claims in this matter finally adjudicated and/or otherwise released; and (5) the legal representatives, successors and assigns of any such excluded person.

60. **Numerosity and Ascertainability**: Upon information and belief, the Class, and all related Subclasses, are composed of more than forty (40) members, such that the Class, and all related Subclasses, are so numerous that joinder of all members is impractical. This conclusion is reasonable because "As of June 30, 2020, GF serviced approximately 16,600 loans totaling $3.5 billion. This is further broken down as approximately 11,400 non-agency RMBS loans totaling $2.4 billion, 5,100 serviced for others totaling approximately $1 billion, and 40 FHA/VA loans totaling $3.7 million.".[1] Moreover, Gregory focuses on the servicing of reperforming and nonperforming mortgages secured by residential real estate.[2] While the exact number of Class members is presently unknown and can only be ascertained through discovery, Class members can easily be identified through Gregory's records or by other means.

61. **Commonality and Predominance:** There are questions of law and fact common to the proposed Class that predominate over any individual questions. Simply put, Defendant imposed Improper Late Fees against Plaintiff and Class members, and Plaintiff and Class members were harmed as a result.

---

[1]*See*, "Fitch Affirms Gregory Funding, LLC's U.S. RMBS Servicer Rating", https://www.fitchratings.com/research/structured-finance/fitch-affirms-gregory-funding-llc-us-rmbs-servicer-rating-14-10-2020 (last accessed March 15, 2021).
[2]*See*, "Profile Report Gregory Funding, LLC" https://www.fitchratings.com/research/structured-finance/gregory-funding-llc-12-09-2019 (last accessed March 15, 2021).

62. **Typicality:** Plaintiff's claims are typical of the claims of the Class and each related Subclass. On information and belief, Plaintiff's and Class members' loans contain substantially similar language, as they were drafted using standardized templates or uniform instruments common to all loans and are intended or planned to be assigned to, or subsequently owned by, government sponsored entities such as Fannie Mae or Freddie Mac, or contain substantially similar language to such documents. As such, Plaintiff and all Class members were subjected to and affected by a uniform course of conduct; specifically, Defendant's imposition of Improper Late Fees.

63. **Adequacy**: Plaintiff will adequately represent the interests of the Class and does not have adverse interests to the Class. Plaintiff's counsel has extensive experience litigating consumer class actions.

64. **Superiority**: A class action is the superior method for the quick and efficient adjudication of this controversy. If individual Class members prosecuted separate actions it may create a risk of inconsistent or varying judgments that would establish incompatible standards of conduct. Moreover, Defendant has acted on grounds generally applicable to the Class as a whole, making final declaratory and injunctive relief appropriate.

**<u>COUNT I</u>**
**Declaratory Judgment**
**(28 U.S.C. §§ 2201, *et seq.*)**
**(On behalf of Plaintiff and the Class)**

65. Plaintiff repeats and realleges paragraphs 1 through 64 with the same force and effect as though fully set forth herein.

66. At all relevant times, there was in effect the Declaratory Judgment Act ("DJA"), 28 U.S.C. §2201(a), which states, in relevant part:

> In a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may

declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

67. Plaintiff, individually, and on behalf of the Class, seeks an order declaring that Plaintiff's and Class members' mortgage loans do *not* authorize the imposition of late fees after acceleration.

68. The controversies presented in this case are definite and concrete and affect the adverse legal interests of the parties. Plaintiff and Class members contend that, pursuant to the terms of their loans, Defendant is legally unable to impose late fees after acceleration. In contrast, Defendant has repeatedly contended that it may legally impose Improper Late Fees. Accordingly, this case will determine the legal scope of Defendant's obligations to Plaintiff and Class members.

69. There is an actual controversy between the parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment because Defendant has imposed, and will continue to impose, Improper Late Fees. Defendant has sent Plaintiff and Class members payoff statements and monthly statements indicating its intent to collect these amounts and has sought to collect these amounts through foreclosure proceedings, bankruptcy proceedings, and through other methods. Notwithstanding Defendant's attempt to collect these Improper Late Fees, Plaintiff and members of the Class assert that they have no legal obligation to pay them because they are unauthorized pursuant to the terms of their loans.

70. If the Court were to deny Plaintiff's and Class members' request for declaratory relief, this controversy will continue to exist, as Defendant will continue to attempt to collect Improper Late Fees—whether through reinstatement, refinancing, loan modifications, foreclosure, during bankruptcy proceedings, etc.—and Plaintiff and Class members will continue to assert that these amounts are unauthorized pursuant to the terms of their loans. As such, the resolution of this

controversy is contingent upon the declaration requested herein, and because Defendant refuses to fulfill its legal obligations to Plaintiff and the Class.

71. Based on the foregoing facts, the Court should declare the rights and other legal remedies pursuant to the terms of Plaintiff's and Class members' loans.

## COUNT II
### Breach of Contract
### (On behalf of Plaintiff and the Class)

72. Plaintiff repeats and realleges paragraphs 1 through 64 with the same force and effect as though fully set forth herein.

73. Plaintiff's and Class members' loans are legally binding and enforceable contracts with Gregory.

74. Pursuant to the terms of Plaintiff's and Class members' loans, Gregory is not authorized to impose late fees after acceleration of those loans.

75. In breach of its contractual obligations under the terms of Plaintiff's and Class members' loans, Gregory imposed Improper Late Fees against Plaintiff and Class members.

76. Plaintiff and Class members have been harmed by Gregory's breach, as they have already paid, or will soon be required to pay, the Improper Late Fees in connection with reinstatement, refinancing, loan modifications, foreclosure, during bankruptcy proceedings, etc.

## COUNT III
### Violation of the FDCPA, 15 U.S.C. §§ 1692e and 1692f
### (On behalf of Plaintiff and the FDCPA Subclass)

77. Plaintiff repeats and realleges paragraphs 1 through 64 with the same force and effect as though fully set forth herein.

78. The FDCPA makes it an illegal, "unfair practice" for a debt collector to undertake "the collection of any amount (including any interest, fee, charge, or expense incidental to the

principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1).

79. "The [FDCPA] is an extraordinarily broad statute and must be construed accordingly" so it would be anomalous to conclude that "any amount" fails to encompass the Improper Late Fees. *See*, *Stratton v. Portfolio Recovery Assocs, LLC*, 770 F.3d 443, 449 (6th Cir. 2014) (internal citations omitted).

80. The Improper Late Fees that Gregory has imposed against and collected or attempted to collect from Plaintiff and FDCPA Subclass members are not authorized by the terms of their loans or otherwise by law.

81. As the Improper Late Fees imposed by Gregory are not authorized by the contract or any provision of law, their collection violates 15 U.S.C. § 1692f.

82. The FDCPA makes it illegal for a debt collector to misrepresent "the character, amount, or legal status of any debt." 15 U.S.C. § 1692e(2).

83. By demanding the Improper Late Fees through periodic billing statements, payoff statements, and other means, Gregory has misrepresented the amounts due and owing in relation to Plaintiff's and the FDCPA Subclass members' loans in violation of 15 U.S.C. § 1692f.

84. As a result of Gregory's actions, Gregory is liable to Plaintiff and FDCPA Subclass members for actual damages, statutory damages, costs, and attorneys' fees. 15 U.S.C. § 1692k.

## COUNT IV
### Violation of the RMLA, R.C. 1322.01, *et seq.*
### (On behalf of Plaintiff and the Ohio Subclass)

85. Plaintiff repeats and realleges paragraphs 1 through 64 with the same force and effect as though fully set forth herein.

86. "No person ... shall act as a … mortgage servicer … without first having obtained a certificate of registration from the superintendent of financial institutions for the principal office and every branch office to be maintained by the person for the transaction of business as a … mortgage servicer ... in this state." R.C. 1322.07(A).

87. Gregory, as a mortgage servicer, is required to be registered with the Ohio Department of Commerce, Division of Financial Institutions under R.C. 1322.

88. Gregory's conduct, in imposing and collecting the Improper Late Fees, is in violation of R.C. 1322.40(C) as it is conduct that constitutes improper, fraudulent, or dishonest dealings.

89. Gregory's conduct caused Plaintiff and Ohio Subclass members to suffer actual damages, as further described, *supra*.

90. As a result of Gregory's conduct, Gregory is liable to Plaintiff and Ohio Subclass members for actual damages, as further described, *supra*, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.52.

91. A registrant, licensee, or person required to be registered or licensed under R.C. 1322, *et seq.*, is required to comply with all duties imposed by other statutes or common law and:

> (3) Act with reasonable skill, care, and diligence; [and]
>
> (4) Act in good faith and with fair dealing in any transaction, practice, or course of business in connection with the brokering or originating of any residential mortgage loan[.]

R.C. 1322.45(A).

92. A registrant, licensee, or person required to be registered or licensed under R.C. 1322 cannot waive or modify its duties under R.C. 1322.45(A). R.C. 1322.45(C).

93. Gregory's conduct, in imposing and collecting the Improper Late Fees, is in violation of R.C. 1322.45(A)(3)-(4).

94. As a result of Gregory's conduct, Gregory is liable to Plaintiff and Ohio Subclass members for actual damages, as further described, *supra*, reasonable attorneys' fees and costs incurred in connection with this action, and punitive damages. R.C. 1322.45(D).

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff LINDA L. GASPER, individually, and on behalf of all others similarly situated, prays for an order as follows:

A. Finding that this action satisfies the prerequisites for maintenance as a class action and certifying the Class (and all related Subclasses) defined hereon;

B. Designating Plaintiff as representative of the Class (and all related Subclasses) and her undersigned counsel as Class Counsel;

C. Entering judgment in favor of Plaintiff and the Class (and all related Subclasses) and against Defendant;

D. Declaring that Defendant is legally prohibited from imposing late fees relative to Plaintiff's and Class members' loans after acceleration;

E. Finding that Defendant breached the terms of its contracts with Plaintiff and Class members, and awarding Plaintiff and the Class members contractual damages in connection therewith;

F. Awarding Plaintiff and FDCPA Subclass members their actual damages and statutory damages as allowed under the FDCPA;

G. Awarding Plaintiff and Ohio Subclass members their actual damages as allowed under the RMLA;

  H. Awarding Plaintiff and Ohio Subclass members punitive damages as allowed under the RMLA;

  I. Awarding Plaintiff, the Class, and all related Subclasses attorneys' fees and costs; and,

  J. Granting all such further and other relief as this Court deems just and appropriate.

### JURY DEMAND

Plaintiff LINDA L. GASPER hereby respectfully demands a trial by jury on all such claims that may be so tried.

Dated: March 18, 2021    Respectfully submitted,

/s/ Marc E. Dann
Marc E. Dann (0039425)
Daniel M. Solar (0085632)
Michael A. Smith Jr. (0097147)
DANN LAW
P.O. Box 6031040
Cleveland, OH 44103
Telephone: (216) 373-0539
notices@dannlaw.com

Thomas A. Zimmerman, Jr. (*pro hac vice* anticipated)
tom@attorneyzim.com
Matthew C. De Re (*pro hac vice* anticipated)
matt@attorneyzim.com
ZIMMERMAN LAW OFFICES, P.C.
77 W. Washington Street, Suite 1220
Chicago, Illinois 60602
Telephone: (312) 440-0020

*Counsel for Plaintiff Linda L. Gasper and the Putative Class and Subclasses*